# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### LAFAYETTE  DIVISION

Peterson                                                    Civil Action No. 16-00725

versus                                            Magistrate Judge Carol B. Whitehurst

Linear Controls Inc.                                      By Consent of the Parties


## MEMORANDUM RULING

Before the Court is a Motion For Summary Judgment filed by defendant, Linear Controls Inc.("Linear Controls"), [Rec. Doc. 29].  Plaintiff, David D. Peterson, filed a Memorandum In Opposition [Rec. Doc. 33] and Linear Controls filed a Reply thereto [Rec. Doc. 39]. For the reasons that follow, the Court will grant the Motion.

### I.  Background

Plaintiff is a former employee of Linear Controls who worked offshore as an electrician on a construction crew and also periodically performed maintenance work on offshore rigs. Plaintiff was employed with Linear Controls for approximately seven (7) years before he submitted a resignation letter on September 23, 2015.

Plaintiff filed an EEOC Charge against Linear Controls on October 21, 2015 alleging that for an approximately six (6) week period in 2015, July 15–August 22, 2015, while working for Linear Controls on the Fieldwood Energy, LLC ("Fieldwood") East Breaks 165 platform, he was discriminated against on the basis

of his race—African-American, and that he was subjected to discrimination based on his religion—Muslin. Plaintiff also claimed "retaliation" in his EEOC charge because he was late for a safety meeting along with two white employees, but he was the only one written-up for the violation.[1] *R. 29-3, Exh. B.* Plaintiff asserted claims under Title VII of the Civil Rights Act of 1964 (42 U.S.C. §2000e) ("Title VII"). After conducting an investigation the EEOC ruled in Linear Controls' favor and found that the evidence did not establish a violation of Title VII on either the race or the religious discrimination claims.

On May 25, 2016, Plaintiff filed a Complaint in this action asserting race and religious discrimination claims under Title VII. Plaintiff also asserted a claim of racial discrimination under Louisiana's Employment Discrimination Law and a state law claim for intentional infliction of emotional distress.

On May 25, 2017, Linear Controls filed the instant Motion for Summary Judgment seeking dismissal on the merits of all of the Plaintiff's asserted federal and state law claims. Plaintiff filed an Opposition to Linear Control's Motion for Summary Judgment on June 29, 2017. *R. 33.*

---

[1]  The EEOC investigated the safety meeting incident as one for disparate treatment rather than retaliation based on Plaintiff's racial discrimination charge.  *R. 29-3, Exh. G.*

## II. Summary Judgment Standard

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is mandated when the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Am. Home Assurance Co. v. United Space Alliance, LLC*, 378 F.3d 482, 486 (5th Cir. 2004). A fact is material if proof of its existence or nonexistence might affect the outcome of the lawsuit under the applicable law in the case. *Minter v. Great American Insurance Co. of New York*, 423 F.3d 460, 465 (5th Cir. 2005). A genuine issue of material fact exists if a reasonable jury could render a verdict for the nonmoving party. *Thorson v. Epps*, 701 F.3d 444, 445 (5th Cir. 2012).

The party seeking summary judgment has the initial responsibility of informing the court of the basis for its motion, and identifying those parts of the record that it believes demonstrate the absence of genuine issue of material fact. *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). If the moving party carries its initial burden, the burden shifts to the nonmoving party to demonstrate the existence of a genuine issue of a material fact. Id. In such a case, the non-movant may not rest upon the allegations in his pleadings, but rather must go beyond the pleadings and designate specific facts demonstrating that there is a genuine issue for trial. *Celotex v. Catrett*, 477 U.S. 317, 325 (1986). All facts and justifiable inferences are construed

in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by pointing out that there is insufficient proof concerning an essential element of the nonmoving party's claim. *Norwegian Bulk Transport A/S v. International Marine Terminals Partnership*, 520 F.3d 409, 412 (5th Cir. 2008). The motion should be granted if the non-moving party cannot produce sufficient competent evidence to support an essential element of its claim. *Condrey v. Suntrust Bank of Ga.*, 431 F.3d 191, 197 (5th Cir. 2005). However, metaphysical doubt as to the material facts, conclusory allegations, unsubstantiated assertions and those supported by only a scintilla of evidence are insufficient. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

In an employment discrimination case, the focus is on whether a genuine issue exists as to whether the defendant intentionally discriminated against the plaintiff. *Grimes v. Texas Department of Mental Health and Mental Retardation*, 102 F.3d 137, 139 (5th Cir. 1996) (and cases cited therein). As in any case, unsubstantiated assertions and conclusory allegations are not competent summary judgment evidence. *Hervey v. Mississippi Dept. of Educ.*, 404 Fed.Appx. 865, 869 (5th Cir. 2010) (citing *Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002)) ("conclusory allegations,

speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden on a motion for summary judgment"). In response to a motion for summary judgment, it is therefore incumbent upon the non-moving party to present evidence—not just conjecture and speculation—that the defendant retaliated and discriminated against plaintiff on the basis of his race. *Grimes*, 102 F.3d at 140.

### III. Undisputed Facts

Linear Controls publishes and distributes company policies addressing discrimination and harassment in the workplace. Linear Controls's Equal Employment Opportunity ("EEO") Policy stated in pertinent part:

> Linear Controls, Inc. provides equal employment opportunities without regard to race, color, age, sex, national origin, religion, disability or veteran status. Linear Controls, Inc.'s commitment to equality extends to all personnel actions including: recruitment, advertising or soliciting for employment, selection for employment, determining rates of pay or other forms of compensation, performance evaluation, upgrading, transfer, promotion, demotion, selection for training or education, discipline, suspension, termination, treatment during employment, and participation in social and recreational programs.

*R 29-2, Undisputed Fact No. 2, citing R. 29, Exh. R, Declaration of Clemons; Exh. S, Employee Handbook.*

Linear Controls also prominently displays at its facilities EEO posters published by the U.S. Department of Labor. These posters provide that

5

discrimination, harassment and retaliation are prohibited. The posters also provide contact information for the U.S. Department of Labor, Equal Employment Opportunity Commission ("EEOC"). In addition, Linear Controls has a written grievance or complaint policy. Linear Controls' management also maintains an open door policy under which employee complaints or concerns can be raised. Employees may raise complaints or concerns with supervisors or with Human Resources. *R. 29-2, Undisputed Fact No. 3, citing Exh. R, Declaration of Clemons; Exh. S, Employee Handbook.*

Plaintiff acknowledged receipt of copies of the above-referenced policies as shown by the signed Receipt and Acknowledgment forms dated October 28, 2008 and March 28, 2012, copies of which are marked as Exhibit T, in globo. *R. 29-2, Undisputed Fact No. 4, also citing Plaintiff's Depo., Exh. D, pp. 175-179.*

Linear Controls originally hired Plaintiff on October 28, 2008 as a Helper earning $9.00/hr. Plaintiff's employment was separated in March of 2009 due to lack of work. *R. 29-2, Undisputed Fact No. 5 citing Exh. R, Declaration of Clemons.*

During the time period relevant to this litigation, Plaintiff worked offshore for Linear Controls as an Electrician on a construction crew. *R. 29-2, Undisputed Fact No. 8 citing Exh. R, Declaration of Clemons.*

On July 13, 2015, while offshore in the Grand Isle area on a job for Linear

Controls' customer, Fieldwood Energy, LLC ("Fieldwood"), Plaintiff was late for a safety meeting. *R. 29-2, Undisputed Fact No. 9 citing Exh. O,7/13/15 Employee Disciplinary Report*.

Plaintiff admits he was late for the meeting. *R. 29-2, Undisputed Fact No. 10 citing Exh. D, Plaintiff's Depo., pp. 152-159, 233-235, 246*.

The next day, July 14, 2015, Plaintiff was sent in from the Grand Isle job. *R. 29-2, Undisputed Fact No. 11 citing Exh. P, 07/14/2015 Employee Disciplinary Report*.

Plaintiff became confrontational with Linear Controls' Maintenance Supervisor, Michael Book, when Plaintiff learned that he was being sent in from the job. *R. 29-2, Undisputed Fact No. 14 citing Exh. Q, Depo. of Davis, pp. 21-25; Exh. P, 07/14/2015 Employee Disciplinary Report*. Michael Book and Plaintiff were the only Linear Controls' employees on the job. *Id. citing Exh. Q, pp. 21-25*.

After being sent in from the Grand Isle job, Plaintiff was put back to work immediately by Linear Controls on another location. *R. 29-2, Undisputed Fact No. 15 citing Exh. R, Declaration of Clemons*.

Plaintiff admits he was late for a safety meeting in August 2015 on the East Breaks 165 project. *R. 29-2, Undisputed Fact No. 17 citing Exh. E, 8/13/2015 (p. 12/100) notes submitted by Plaintiff to EEOC*.

No disciplinary action was incurred by any employee, including Plaintiff, in August 2015 on the East Breaks 165 project as Linear Controls did not receive any reports from Fieldwood that either Duhon, Hammett or Plaintiff were late for any safety meeting in August 2015. *R. 29-2, Undisputed Fact No. 18 citing Declaration of Clemons*.

On September 15, 2015, Plaintiff called Tim Davis, Linear Controls' Construction Project Manager, asking to have his employment terminated by Linear Controls. Davis declined since the company was not conducting layoffs at the time and had a project coming up and needed Plaintiff to work. *R. 29-2, Undisputed Fact No. 21 citing Depo. of Davis, pp. 19-20; Plaintiff's Depo., pp. 160-169*.

On September 23, 2015, Plaintiff submitted a letter to Linear Controls stating: "I will like to resign from Linear Control's, due to I am continuing my education as an electrician to further my career." *R. 29, Exh. C, Plaintiff's 09/3/2015 letter*.

Plaintiff's resignation letter makes no reference to discrimination or harassment based upon race or religion or to any other alleged unlawful discriminatory acts or conduct. *R. 29-2, Undisputed Fact No. 25 citing Exh. C, Plaintiff's 09/3/2015 letter.*

After his resignation, Plaintiff did continue his education, receiving additional training and/or education through the International Brotherhood of Electrical Workers ("IB EW") and otherwise. *R. 29-2, Undisputed Fact No. 26 citing Plaintiff's*

*Deposition, pp. 10, 41-43, 174-175.*

Plaintiff filed his Charge of Discrimination on October 28, 2015, and the EEOC issued a Notice of Right to Sue at Plaintiff's request , due to the passage of time, on February 22, 2016. *R. 29-2, Undisputed Fact No. 27 citing Exh. B, EEOC Charge, Exh. F, EEOC Notice of Right to Sue.*

Plaintiff worked for Linear Controls on Fieldwood's East Breaks 165 platform from July 16, 2015 to July 26, 2015 and from August 2, 2015 to August 22, 2015. From July 27, 2015 to August 1, 2015, Plaintiff was off. *R. 29-2, Undisputed Fact No. 28 citing Declaration of Clemons.*

Duhon denies making any comments to Plaintiff about being a Muslin. *R. 29-2, Undisputed Fact No. 31 citing Exh. I, Depo of Duhon, pp 21-22.*

The job description for an Electrician on a Linear Controls' construction crew, as was Plaintiff, called for working outdoors including exposure to "a typical offshore site" and the "ability to work in a work area where work temperatures may be affected by outside temperatures." *R. 29-2, Undisputed Fact No. 37 citing Plaintiff's Depo., pp. 179-182; Exh. L, Job Description, Bates Nos. L00720-L000721.*

Working in an outdoor environment was part of Plaintiff's job description and regular job duties. *R. 29-2, Undisputed Fact No. 38 citing Plaintiff's Depo., pp. 179-182; Exh. L, Job Description, Bates Nos. L00720-L000721; Declaration of*

*Clemons*.

Although he was an Electrician and a member of Linear Control's construction crew, Plaintiff was given assignments on maintenance projects from time to time if the work was within his capabilities. *R. 29-2, Undisputed Fact No. 40 citing Exh. N, Declaration of Macdonald*.

Plaintiff was offered a maintenance position within his capabilities and for which he was qualified, pursuant to an inquiry from Plaintiff. *R. 29-2, Undisputed Fact No. 41 citing Exh. N, Declaration of Macdonald; Davis' Depo., pp. 36-38*.

Plaintiff declined the offer as he would potentially make less money working in maintenance even though the job paid $1.00 more per hour. Generally, Electricians on a construction crew work longer shifts (more than 14 days) and more hours per day than workers on a maintenance job. Also, in a full-time maintenance position, Plaintiff would generally not have the opportunity to work as an Electrician, when not working on a maintenance job, as Electricians are assigned to work on specific projects. *R. 29-2, Undisputed Fact No. 42 citing Declaration of Macdonald; Davis' Depo., pp. 36-38*.

Calvin J. Broussard, Jr., an African-American man, accepted the maintenance position that Plaintiff declined. *R. 29-2, Undisputed Fact No. 43 citing Declaration of Macdonald; Davis' Depo., pp. 36-38*.

Plaintiff does not contend that his job performance trailed off while working for Linear Controls. Plaintiff testified that his overall performance improved throughout the course of his employment. *R. 29-2, Undisputed Fact No. 45 citing Plaintiff's Depo., p. 147.*

A year and three months after he resigned from Linear Controls, while working for his second, subsequent employer , and after this lawsuit was filed, Plaintiff saw his family doctor for anxiety on one (1) occasion, December 27, 2016. As Plaintiff testified, no mention was made of Linear Controls to the doctor. *R. 29-2, Undisputed Fact No. 46 citing Plaintiff's Depo., pp. 212, 217-225.*

Though offered prescription medication at that time, Plaintiff testified that he did not feel that he needed it and did not fill the prescription, nor does he intend to do so. *R. 29-2, Undisputed Fact No. 47 citing Plaintiff's Depo. pp. 224-225.*

*IV. Law And Analysis*

*A. Exhaustion of Administrative Remedies*

A Title VII plaintiff must file a timely charge with the EEOC before he can commence a civil action under Title VII in federal court. 42 U.S.C. § 2000e-5(e)(1), (f)(1)4; *Nat'l RR Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002); *Dao v Auchan Hypermarket*, 96 F. 3d 787, 789 (5th Cir. 1996). Although filing an EEOC charge is not a jurisdictional prerequisite, it "is a precondition to filing suit in district

court." *Dao*, 96 F.3d at 789. It is equally well settled that a civil action may not be commenced until after the charging party has received a "right-to-sue" letter from the EEOC. 42 U.S.C. § 2000e–5(f)(1); *Nielsen v. City of Moss Point, Miss.*, 621 F.2d 117, 120 (5th Cir. 1980).

The scope of the charging party's subsequent right to institute a civil suit is fixed such that the EEOC charge may be enlarged only by such investigation as reasonably proceeds therefrom. *National Association of Government Employees v. City Public Service Board of San Antonio, TX*, 40 F.3d 698, 711-712 (5th Cir. 1994). Thus, the suit which is subsequently filed may encompass only "the discrimination stated in the charge itself or developed in the course of a reasonable [EEOC] investigation of that charge." *Id*. at 712. Stated differently, the scope of a Title VII action "is limited to the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Young v. City of Houston, TX.*, 906 F.2d 177, 179 (5th Cir. 1990).

On October 28, 2015, Plaintiff filed a Charge of Discrimination with the EEOC ("the Charge"). *R. 29, Exh. B*. Plaintiff defined the time period applicable to his charge as "07-13-2015" to "07-14-2015." The Charge stated:

> I began my employment with Linear Controls on October 28, 2008 most recently as an Electrician. I was subjected to Muslim jokes and comments because of my religious beliefs (not eating pork). On July 13, 2015, I was

subjected to different terms and conditions of employment, in that, myself and three other guys were late for a safety meeting but I was the only person written up and the next day I received another write-up for no reason. There were five White and five Black guys. The Black guys had to work in the heat but the White guys did not, we were not allowed to take water breaks but the White guys were. The Managers would also judge my appearance and overlook my work. The company employs more than 500 employees.

No reason was given for the action taken against me.

I believe I have been discriminated against because of my religion, _____[blank in the original]; race, Black; and retaliated against in violation of Title VII of Title VII (sic) of the Civil Rights Act of 1964, as amended, in that Chad Duhon and Brandon Hammett, both White males, were late for a safety meeting but received no write ups.

Thus, in his EEOC charge Plaintiff stated claims for: (1) discrimination based on race and religion; (2) harassment based on religion; (3) retaliation; and (4) disparate treatment based on race.

Plaintiff's allegations in his Complaint included claims of (1) discrimination based on race and religion; (2) harassment based on religion and race[2]; (3) disparate treatment based on race; (4) constructive discharge; and (5) retaliation. Plaintiff's Complaint filed on May 25, 2016, alleged:

1.      From July 15 to July 26, 2015, Plaintiff was working offshore as an electrician on a crew on the Fieldwood

_____

[2] In his Opposition Memorandum, Plaintiff contends that the outdoor work he was required to perform and the outdoor water breaks constituted harassment and hostile work environment based on his race.

Energy, LLC East Breaks 165 platform ("East Breaks 165") and that, during that time, black crew members were required by Linear Controls' white supervisors to work every day outside, in the heat while white crew members worked exclusively inside, in air-conditioned facilities;

2.　　During that time, if any black crew member, including Plaintiff, took a water break inside, the white supervisors would curse and yell and order him back to work; and

3.　　Despite alleged requests by the black employees to their white supervisors, there was no rotation from outside to inside among white and black crew members. *R.1, ¶ VIII*.

The Complaint also alleged that white employees, Chad Duhon, Plaintiff's direct supervisor, and Brandon Hammet, Plaintiff's co-employee, were late for safety meetings but not admonished. In his EEOC charge, Plaintiff alleged that he was "retaliated against" because Duhon and Hammett were not written up. The Complaint further alleged that Plaintiff was harassed by his white supervisors without reason and that Duhon and Hammet made jokes and derogatory comments about Plaintiff's religion. In addition, the Complaint alleged that Plaintiff's request to leave an offshore project due to a family emergency illness was "denied" by his white supervisor(s). The Complaint also alleged that Plaintiff was "laid off ... and never called to return back to work." Finally, the Complaint alleged Plaintiff was "forced to and did voluntarily resign."

*1. Claims Not In The Charge Nor Alleged In The Complaint*

Plaintiff contended in his deposition that he wanted a transfer or promotion from his position as an Electrician on a construction crew to a foreman's position or a job on a maintenance crew, but was denied a promotion. *R. 29, Exh. D, Plaintiff's Depo, pp. 86-89.* Plaintiff claimed that a Caucasian employee was given a job on the maintenance crew and he was not. *Id. at pp. 93, 190.* Plaintiff's claim is disputed by the record. Plaintiff was offered a maintenance position which he declined because he would potentially make less money working in maintenance as Electricians on a construction crew work longer shifts (more than 14 days) and more hours per day than workers on a maintenance job. *R. 29-2, Undisputed Fact Nos. 41 and 42.* Moreover, the maintenance position that Plaintiff declined was ultimately accepted by Calvin J. Broussard, Jr., an African-American man. *Id., Undisputed Fact No. 43.* Even assuming that Plaintiff had a viable claim, which he does not, because Plaintiff did not assert any such failure to promote claim in his EEOC charge, he is precluded from including it in this action.

*2. Claims In The Charge Not Alleged In The Complaint*

Plaintiff's EEOC charge alleged that unidentified "Managers" judged Plaintiff's appearance and overlooked his work. However, there is no such allegation in the Complaint; therefore, there is no such claim presently before the

Court. Any claim premised on Plaintiff's appearance allegedly being judged and his work allegedly being overlooked must be dismissed. *See Cassimere v. Fastorq, LLC*, 2017 WL 812468, at *12 (W.D. La. 2017)(Dismissing on summary judgment claims not included in plaintiff's EEOC charge or Title VII complaint.)

### 3. Allegations In The Complaint Not Stated In The Charge

#### a. Denial of Leave

Plaintiff alleged in his Complaint that he was denied the opportunity to go home for a family illness emergency while working on the subject platform. While Plaintiff did not include this claim in the Charge and the EEOC did not investigate this claim, he did mention it in the handwritten notes in the EEOC Questionnaire. *R. 29-3, p. 99.* Because this claim is not in the Charge and was not developed in the ensuing EEOC investigation, it may not be pursued in this action.

Regardless, Plaintiff's claim is without merit. In a June 27, 2015 handwritten note and in his deposition, Plaintiff conceded he was allowed to leave the platform with the understanding that he might not be able to return to the same project. *R. 29-3, Exh. E, p. 104; Exh. D, pp. 119-125, 132-133.* In fact, Plaintiff returned to the same project. Also, Tim Davis, Linear Controls' Construction Project Manager, testified that Plaintiff had requested personal leave on numerous occasions—his requests were never denied and he was allowed to return to the project, rig or worksite. Thus, this

claim lacks merit.

### b.  Safety Meeting Write-ups

In his EEOC charge Plaintiff claimed that his direct supervisor, Chad Duhon, and Brandon Hammett, his co-employee, both Caucasian, were late for safety meetings but not admonished. Plaintiff contended that he was "retaliated against" because Duhon and Hammett were not written up. In his Charge, Plaintiff specifically stated that on July 13, 2015, while he was working on the Grand Isle platform, he, Duhon and Hammett were late, but he was the only one written up. *R. 29-3, p. 7.* In the notes in the EEOC Questionnaire, Plaintiff further stated that he received another write-up the next day, July 14, for the July 13, 2015 incident which was a "final warning." *Id, p. 99, No. 5, A & B.*

Plaintiff admits that he overslept and was late for the July 13, 2015 meeting. Contrary to his claim, Plaintiff's own deposition testimony establishes that Duhon and Hammett did not work on the Grand Isle platform on July 13, 2015. *R. 29-3, Exh. D, p. 235*. Also, the testimony of Davis, the Project Manager, provided that Plaintiff was sent in from the Grand Isle job because Linear Controls' customer did not want to use Plaintiff on the job any longer. *Id., Exh. Q, pp. 20-35.* Thus, Linear Controls has established a legitimate, nondiscrminatory reason for the July 13, 2015 and July 14, 2015 write-ups.

In his Complaint and EEOC Questionnaire notes, Plaintiff claimed that he was late for a safety meeting in August, 2015 while on the East Breaks 165 platform and was chastised "unprofessionally' by his Caucasian supervisors. The Declaration of Dawn Clemons, Linear Controls' Chief Financial Officer, states that "[a]fter being sent in on July 14, 2015 from the Grand Isle job, Plaintiff was put back to work immediately [on the East Breaks 165 platform]." *R. 29-4, p. 32.* Clemons further states that Linear Controls received no reports that Plaintiff, Duhon or Hammett were late for any safety meeting in August 2015 and no disciplinary action was incurred by any employee, including Plaintiff. *Id.*

But assuming *arguendo* that a disciplinary write-up was issued, in order to establish a prima facie case of discrimination as well as for retaliation under Title VII, a plaintiff must demonstrate an adverse employment action. A disciplinary write-up does not constitute an adverse employment action. *Cassimere*, 2017 WL 812468, at *9 (citing *King v. Louisiana*, 294 Fed.Appx. 77, 85 (5th Cir. 2008) (Allegations of unpleasant work meetings and verbal reprimands do not constitute actionable adverse employment actions.)). Plaintiff has supplied no competent summary judgment evidence which constitutes an adverse employment action with regard to the write-up claims. The Court will grant Defendant's motion to dismiss this claim.

### c. Constructive Discharge

The allegations in the Complaint that Plaintiff was "laid off ... and never called back to return to work " and "forced to and did voluntarily resign" are not in included in his Charge and therefore must be dismissed. As previously stated, it is well-established that the failure to assert a claim in an EEOC charge precludes an employee from including that claim in a later civil action. As stated in *Calmes v. JPMorgan Chase Bank*, 943 F.Supp.2d 666, 681-682 (E.D. La. 2013), "If a plaintiff fails to state a particular claim in his EEOC charge or if that charge is not developed in the ensuing EEOC investigation, the plaintiff is precluded from bringing that claim in his civil suit." In *Calmes*, the plaintiff submitted a letter of resignation stating that he was resigning to look for other employment. *Id.* at 682. The plaintiff then filed an EEOC charge and later filed a Title VII complaint alleging harassment, retaliatory discharge and constructive discharge. *Id.* The charge, however, did not allege retaliatory or constructive discharge. *Id.* The court dismissed the retaliatory and constructive discharge claims on summary judgment, stating in pertinent part:

> [T]he Court notes that despite the fact that Plaintiff's charge was filed with the EEOC on June 15, 2010, a mere three days after his resignation took effect, Plaintiff failed to inform the EEOC that he had resigned/felt that he had to resign as a result of Defendant's conduct. The charge itself contains allegations of harassment by Mr. Ritchel and details the subsequent behavior by Defendant; however, it fails

to assert that such behavior caused Plaintiff to terminate his employment. As such, Plaintiff is precluded from bringing a claim for constructive discharge in the instant action ....

[A]t no point in the EEOC charge does Plaintiff state that the alleged harassment has resulted in any definitive termination of his employment. Rather, Plaintiff explains that he has been suspended with pay and that Defendant is attempting to force him to take disability leave, not terminate him. Plaintiff does not contend [in the EEOC charge] that he has left and/or has been forced to leave. Accordingly, Plaintiff is also precluded from bringing a claim of retaliatory discharge ....

*Id*. at 682. *See also*, *Harris*, 178 F.Supp. 2d at 690 (W.D. La. 2001)(Employee's Title VII claims including the denial of various promotions and opportunities, hostile work environment, and retaliation were not properly before the Court as employee's charge referred only to her employer's failure to promote her for specific positions); *Stone v. Louisiana Dept. of Revenue*, 590 Fed. Appx. 332, 338 (5th Cir. 2014)(dismissing constructive discharge and other claims since plaintiff's EEOC charge did not allege facts reasonably encompassing such claims).

An EEOC charge must state facts sufficient to trigger an EEOC investigation and put the employer on notice of the existence and nature of the claim. *Stone* at 338. Here, Plaintiff's Charge does not mention Plaintiff's separation of employment at all. The Charge was signed by Plaintiff on October 21, 2015 and filed on October 27, 2015, approximately a month after Plaintiff submitted his letter of resignation on September 23, 2015. While Plaintiff's resignation letter states that

he was resigning to seek additional education to further his career[3], the Charge makes no reference to being laid off or forced to resign. Likewise, Plaintiff's resignation letter states nothing about harassment or discrimination.

Plaintiff's Charge did not specifically contain, or reasonably encompass, any claim regarding his separation from employment and was never amended or supplemented to include one. Thus, the EEOC did not inquire into Plaintiff's separation of employment at any time prior to closing the case. *R. 29, Exhs. G, H.* The EEOC closed its investigation and issued a "Notice of Right to Sue (Issued on Request)" on February 22, 2016. "[I]f an EEOC investigation has actually been conducted, most courts hold that the scope of the complaint is limited to the actual scope of the investigation." *National Association of Government Employees v. City Public Service Board of San Antonio, Tx*, 40 F.3d 698, 712 (5th Cir. 1994) (citing 2 Larson, Employment Discrimination § 49.11(c)(1) at 9B–16). Accordingly, Plaintiff's claims of constructive, retaliatory or other allegedly unlawful discharge must be dismissed for failure to include them in the EEOC Charge.

*B. Discrimination Claims*

Title VII prohibits employers from discriminating against employees on the basis of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e–2(a). "The

---

[3] Plaintiff testified he did in fact seek additional education.

Title VII inquiry is whether the defendant intentionally discriminated against the plaintiff." *Alvarado v. Texas Rangers*, 492 F.3d 605, 611 (5th Cir. 2007). A plaintiff can prove Title VII discrimination through direct or circumstantial evidence. *Turner v. Baylor Richardson Medical Center*, 476 F.3d 337, 345 (5th Cir. 2007); *Alvarado* at 611. Direct evidence of an employer's discriminatory intent is rare; therefore, Title VII plaintiffs must ordinarily prove their claims through circumstantial evidence. *Rhodes v. Guiberson Oil Tools*, 75 F.3d 989, 993 (5th Cir. 1996) (en banc).

Where there is no direct evidence of discrimination, Title VII claims are analyzed using the framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Paske v. Fitzgerald*, 785 F.3d 977, 984 (5th Cir. 2015). A Title VII plaintiff bears the initial burden to prove a prima facie case of discrimination by a preponderance of the evidence. *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 404 (5th Cir. 1999) citing *McDonnell Douglas*, 411 U.S. at 801-803.

Here, Plaintiff contends he suffered racial and religious discrimination during his employment on Fieldwood's East Breaks 165 platform sometime between July 15 and August 22, 2015, when he terminated his employment. Plaintiff asserts a claim of disparate treatment based on his race and claims of harassment creating a hostile work environment based on his religion and his race. The Court will consider

Plaintiff's claims as follows.

*1. Disparate Treatment*

To establish a prima facie case of disparate treatment racial discrimination, the plaintiff must provide evidence that: "(1) he is a member of a protected class, (2) he was qualified for the position at issue, (3) he was the subject of an adverse employment action, and (4) he was treated less favorably because of his membership in that protected class than were other similarly situated employees who were not members of the protected class, under nearly identical circumstances." *Paske*, 785 F.3d at 985 (quoting *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009)).

The Fifth Circuit defines "similarly situated" narrowly. *Silva v. Chertoff*, 512 F.Supp.2d 792, 803 n. 33 (W.D.Tex.2007) (citing *Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 405 (5th Cir.2005)). Similarly situated individuals must be "nearly identical" and must fall outside the plaintiff's protective class. *Wheeler* at 405. To show that an employee outside the protected class was "similarly situated" but treated more favorably, a plaintiff must show that the alleged misconduct of both employees was "nearly identical." *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 221 (5th Cir.2001). "The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status

determined by the same person, and have essentially comparable violation histories." *Turner v. Kansas City Southern Ry. Co*., 675 F.3d 887, 893 (5th Cir. 2012).

The prima facie case, once established, raises a presumption of discrimination, which the defendant must rebut by articulating a legitimate, nondiscriminatory reason for its actions. *Shackelford*, 190 F.3d at 404. If the defendant satisfies this burden, the presumption of discrimination raised by the prima facie case disappears, and the plaintiff is left with the ultimate burden of proving discrimination. *Sandstad v. CB Richard Ellis, Inc*., 309 F.3d 893, 897 (5th Cir. 2002). The plaintiff may satisfy this burden by producing "substantial evidence" which proves that the proffered reasons are pretextual. *Id.; Shackelford*, 190 F.3d at 404. The plaintiff must put forward evidence rebutting each of the nondiscriminatory reasons the employer articulates. *Wallace v. Methodist Hospital System*, 271 F.3d 212, 220 (5th Cir. 2001). "Evidence that the proffered reason is unworthy of credence must be enough to support a reasonable inference that the proffered reason is false; a mere shadow of doubt is insufficient." *Auguster vs. Vermilion Parish School Board*, 249 F.3d 400, 403 (5th Cir 2001). The Fifth Circuit has "consistently held that an employee's 'subjective belief of discrimination' alone is not sufficient to warrant judicial relief." *Auguster*, 249 F.3d at 403 (citing *Bauer v. Albemarle Corp*., 169 F.3d 962, 967 (5th Cir. 1999)).

Plaintiff alleges in his Complaint that "from July 15, 2015 to July 26, 2015 [he]

was a member of Defendant's work crew" on the East Breaks 165 platform. *R. 1, ¶ VIII.* While Plaintiff acknowledged that his job description called for exposure to "a typical offshore site" and the "ability to work in a work area where temperatures may be affected by outside temperatures," *R. 29, Exh. D, Plaintiff's Depo., pp. 179-182*; *R. 29-2, Undisputed Facts 37, 38,* he maintains that the African-American crew members were required to work every day outside while the Caucasian crew members worked exclusively inside in air-conditioned facilities. Plaintiff further contends that if an African-American employee took a water break inside, the white supervisors would curse and yell and order the employee back to work. *Id*. In particular, Plaintiff testified in his deposition that, after sitting inside the safety man, Jimmy Cox's, office drinking water for a couple of minutes, his Caucasian supervisor, Robert Walker, fussed at him and told him to get the "f" back to work. *R. 29, Exh. D, Plaintiff's Depo., pp. 75-83,100.* Plaintiff got up and went back to work. *Id.*

In his Declaration, Broc Arnaud, Linear Control's employee since July 1, 2014, who personally worked with Plaintiff, stated that Caucasian employees, including Arnaud himself, worked both outside and inside on the subject platform; and that Caucasian and African-American employees worked together outside on the platform. *R. 29-2,Exh. K, Declar. Of Arnaud, ¶ 3.* In particular, Arnaud testified that he personally observed African-American employees of Linear Controls, namely Daniel

Harris, Archie Mouton, Aaron Boudreaux and Chris Lavergne, working inside on the East Breaks 165 platform. *Id.* Arnaud also stated that he personally observed Plaintiff working inside for a period of time. *Id.* Moreover, Arnaud stated that he, Matthew Latiolais and Brandon Hammett, worked outside. *Id.* Robert Walker, one of Plaintiff's direct supervisors, testified that he himself had worked outside pulling cable and that African-American employees worked inside on the subject platform. *R. 29-3, Exh. J, Walker Depo., pp. 22-23.*

Arnaud also stated that all employees on the East Breaks165 platform were allowed to take water breaks when needed and they were allowed to get water and Gatorade from refrigerators or coolers at any time. He further stated that Linear Controls' managers would regularly and routinely hand out water to their employees who were working outside throughout the shift. *R. 29-2, Declar. Of Arnaud, ¶5.* Also, Walker, Plaintiff's supervisor testified that neither he nor Duhon "got onto workers for stopping to get a drink of water." *R. 29-3, Walker Depo., p. 23.* Rather, he stated, they would actually bring the workers water. *Id.*

Plaintiff has identified no similarly situated Caucasian employee who performed the same work he performed and was allowed to work exclusively indoors. Nor has Plaintiff identified a similarly situated Caucasian co-worker performing his same work who was allowed to take a water break like the one Plaintiff was allegedly

denied. Rather, Plaintiff's Complaint and his deposition offer nothing more than general claims that Caucasian workers were treated better than him.

In his opposition memorandum, Plaintiff submits the Declaration of Archie J. Mouton, an Electrician on the East Breaks 165 platform who states he worked "in July 2015" with Plaintiff on a crew of four African Americans, including Plaintiff and himself. *R. 33-1, ¶ 1, 2*. As to Plaintiff's allegations of racial disparity in the outdoor versus indoor working environment, Mouton states, "[b]oth crews had the same job, however, my crew was assigned to work outside in the heat. The white crew worked inside in the air conditioning." *Id, ¶ 3*. Plaintiff also submits the Declaration of Jimmy Cox, the Safety Representative for United Fire Safety who "was contracted to work at ... East Breaks 165 platform." *R. 33-2*. Cox states that "all black workers that were employed by Linear had to work outside and all the white employees worked inside where there was air conditioning. Plaintiff's supervisor, Chad Duhon, stayed inside and would yell at any of the black employees who came inside to get water or took breaks." *Id. at ¶ 4*.

Defendant objects to the statements of Mouton and Cox. Federal Rule of Civil Procedure 56(c)(4) requires that a declaration used to support or oppose a motion "must be [1] made on personal knowledge, [2] set out facts that would be admissible in evidence, and [3] show that the [] declarant is competent to testify on the matters

stated." Fed. R. Civ. P. 56(c)(4). Defendant objects to Mouton's declaration for failure to attest to personal knowledge as to any Caucasian co-workers who "had the same job" and who "worked inside in the air conditioning." *R. 35-3*. Defendant contends that Mouton does not provide the actual time period which he worked on the platform, instead simply states that he was on the project "six weeks" "in July 2015," and therefore has not laid the proper foundation to establish his personal knowledge. Defendant also objects to Cox's statements on the basis of personal knowledge in that Cox merely makes a reference to "July 2015" and does not specify the dates he was actually on the platform or whether he was there for the entirety of Plaintiff's employment. Nor does Cox testify as to the basis of his personal knowledge of how he knows which employees were Linear Controls' employees, the race of any particular employees and the job titles and positions of any of the employees.[4]

In addition to its objections for failure to lay a proper foundation/lack of personal knowledge as required by FRE Rule 602, Defendant also objects to both Declarations on the basis of relevance under FRE 401, inadmissible hearsay offered to prove the truth of the matters asserted, pursuant to FRE Rule 801, and

---

[4] The Court notes that throughout the Declaration, Cox's "statements" are referenced in the third person—"Declarant states" or "Declarant says"— rather than the first person. Such a reference questions whether the Declaration is actually Cox's own statement.

argumentative, speculative and conclusory statements which are not based on personal knowledge, inadmissible under FRE Rule 701.

While a declaration need not specifically state that it is based on personal knowledge, it must include enough factual support for a court to determine that its averments were based upon the personal knowledge of the declarant. Fed. R. Civ. P. 56(c)(4); *Gahagan v. United States Citizenship and Immigration Services*, 2016 WL 7187943, at *2 (E.D.La., 2016) (citing *Thomas v. Atmos Energy Corp.*, 223 Fed.Appx. 369, 374 (5th Cir. 2007)). When considering a motion for summary judgment, a court disregards any portion of a declaration that fails to comply with Rule 56(c)(4). *Akin v. Q–L Investments, Inc.*, 959 F.2d 521, 531 (5th Cir. 1992).

The Court finds that Mouton and Cox's declarations as to Plaintiff's claims at issue fail to comply with the requirements of Rule 56(c)(4). The declarants have not laid the proper foundation to demonstrate their presence on the platform during the relevant period of time or that they had personal information in order to establish that the alleged disparity between the crew members was based on a comparison of similarly situated employees. "The similarly situated prong requires a Title VII claimant to identify at least one coworker outside of his protected class who was treated more favorably under nearly identical circumstances. This coworker, known as a comparator, must hold the same job or hold the same job responsibilities as the

Title VII claimant; must share the same supervisor or have his employment status determined by the same person as the Title VII claimant; and must have a history of violations or infringements similar to that of the Title VII claimant." *Alkhawaldeh v. Dow Chemical Company*, 851 F.3d 422, 426–27 (5th Cir. 2017). Thus, as Plaintiff has failed to identify a similarly situated Caucasian comparator, he cannot establish a prima facie case.

Even if Plaintiff had identified a similarly situated Caucasian comparator who was assigned to work exclusively inside the platform facility and/or allowed to take a water break inside, Plaintiff's claims still fail as a matter of law because he has not alleged or testified to any adverse employment action. "Adverse employment actions include only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating." *Green v. Adm'rs of Tulane Educ. Fund*, 284 F.3d 642, 657 (5th Cir. 2002).

Defendant directs the Court to *Harris v. Attorney General U.S.A.*, 2017 WL 1493692 (3rd Cir. 2017), a case with facts similar to the instant one. In *Harris* the Third Circuit stated:

> [Plaintiff] has described the...discriminatory action as forcing him "to work under unhealthful environmental (excessive heat) conditions," or directing him "to perform mowing activities on a day where the temperature and heat index were dangerously high"... The District Court concluded that this single action did not amount to an adverse employment action, because it did not alter [plaintiff's]

"compensation, terms, conditions, or privileges of employment,"... and it did not reduce his opportunities for promotion or professional growth... Rather, [plaintiff] was assigned to complete one of his regular job duties. Id. at *2.

Defendant argues that just as the court held in *Harris*, working outside in the heat between July 15, 2015 and July 26, 2015, was part of Plaintiff's job description and his regular job duties, such action does not meet the definition of "adverse employment action", i.e., a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits. *See also*, *Breaux v. City of Garland*, 205 F.3d 150, 157 (5th Cir. 2000) (noting that the U.S. Fifth Circuit takes a narrow view of what constitutes an adverse employment action.)

Similarly, Plaintiff's allegations that he was not allowed to go inside and take his water break don not constitute an adverse employment action. Actions such as assigning an employee more difficult work, giving employees unequal break times, and giving allegedly biased annual evaluations are not "adverse actions" within the meaning of Title VII. *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 486 (5th Cir. 2008) (break requests); *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 407 (5th Cir. 1999) (unfair employee evaluations); *Benningfield v. City of Houston*, 157 F.3d 369, 376-77 (5th Cir. 1998) (heavier work load). Neither the alleged assignment

of outdoor work nor the denial of an inside water break is an adverse employment action within the meaning of Title VII. Defendant's Motion in this regard will be granted.

*2. Harassment Claims*

Plaintiff asserts a purported hostile work environment claim premised on allegations of religious harassment. Plaintiff alleges he was subject to Muslim jokes and comments made by his supervisor, Duhon, and co-employee, Hammett, while working on Fieldwood's East Breaks 165 platform sometime between July 15 and August 22, 2015. In his Opposition, Plaintiff appears to raise a harassment and hostile work environment claim based on the allegations that he was not allowed to work inside and was denied a water break. While Plaintiff's EEOC Charge indicates these allegations as to racial discrimination were based on disparate treatment, the Court will also consider whether these claims constitute racial harassment and hostile work environment under Title VII.

To state a prima facie case of hostile work environment based on harassment, an employee must show that: (1) he belongs to a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment complained of was based on a protected characteristic; (4) the harassment complained of affected a term, condition or privilege of his employment; and (5) the employer knew or should have

known of the harassment and failed to take prompt remedial action. *Watts v. Kroger Co.*, 170 F.3d 505, 509-510 (5th Cir. 1999); *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998) (Element five need not be established if the alleged harassment is committed by employee's supervisor.).

For harassment to affect a "term, condition or privilege of employment," it must be so "severe or pervasive" as to alter the terms or conditions of employment and create an abusive working environment. *Watts*, 170 F.3d at 509. To determine whether behavior qualifies as severe or pervasive harassment, Federal Courts look to subjective and objective components. *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1276 (11th Cir. 2002). Thus, to be actionable, the behavior alleged must result in a work environment that the plaintiff subjectively perceives as abusive and that a reasonable person would deem abusive. *Harris v. Forklift Sys. Inc.*, 510 U.S. 17, 21–22 (1993). The following factors weigh on whether a work environment is objectively abusive or hostile: (I) the frequency of the discriminatory conduct; (ii) its severity; (iii) whether it is physically threatening or humiliating, or a mere offensive utterance; and (iv) whether it unreasonably interferes with an employee's work performance. *Faragher*, 524 U.S. at 787-788; *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002).

It is well settled that the mere utterance of an "epithet which engenders

33

offensive feelings in an employee" does not sufficiently alter the terms or conditions of employment in a way that violates Title VII. *Faragher*, 524 U.S. at 787. Thus, simple teasing, rudeness, offhand remarks, and isolated incidents of derogatory overtures are insufficient to establish a hostile working environment. *Id.* at 787-788; *Baker v. Starwood Hotel and Resort*, 1999 WL 397405, at *3 (E.D. La. 1999).[5]

### a. Religion

Regarding Plaintiff's EEOC charge for harassment based on his Muslin religion, Plaintiff stated in his deposition that while working for Linear Controls on the East Breaks 165 platform, Duhon and Hammett would say to him "loo, loo, loo, boom" or "do, do, do, boom," which Plaintiff testified sounded to him like "Muslims blowing up stuff." *R. 29, Exh. D, Plaintiff Depo. pp. 106–112*. In his deposition, Plaintiff interpreted this phrase as a reference to "terrorists." Plaintiff did not identify any derogatory comments containing the words "religion," "Muslim" or "pork." *Id.* Plaintiff did not allege or testify to any physical harm or threats of

---

[5] Defendant cites several unpublished opinions from the Eleventh Circuit including *Alansari v. Tropic Star Seafood Inc*., 388 Fed. Appx. 902, 905 (11th Cir. 2010), a case involving a claim of religiously hostile work environment brought by a Muslim. The circuit court affirmed summary judgment, noting that behavior "including solicitations to go to church because 'Jesus would save' [him], other comments about his Muslim religion, and the playing of Christian music on the radio ... may have been unwanted and even derogatory ... but it did not rise to a threatening or humiliating level." Defendant also cites *Byrd v. Postmaster Gen*., 582 Fed. Appx.787 (11th Cir. 2014); *Richardson v. Dougherty County, Ga.*, 185 F. App'x 785, 791 (11th Cir. 2006).

harm, just "jokes and comments." *Id.*[6]

As to Plaintiff's deposition testimony that the statements, "loo, loo, loo, boom" or "do, do, do, boom," were religious harassment, Defendant contends that these comments were insufficient to establish a prima facie case of religious discrimination. *See Lara v. Raytheon Technical Service,* 476 Fed. Appx. 218 (11th Cir. 2012) (Christian employee failed to establish prima facie case of hostile work environment based on religious harassment since, among other reasons, many of the instances of harassing behavior, which took place over a month and a half, were not even related to religion). The Court agrees. The alleged remarks attributed to Duhon and Hammett have nothing to do with religion, thereby eliminating a required element of Plaintiff's prima facie case—harassment based on a protected characteristic. Moreover, Duhon testified in his deposition that he did not know Plaintiff was a Muslim, *R. 29, Exh. D, Plaintiff's Depo, pp. 197-98*, and Plaintiff has produced no evidence showing that Hammett knew Plaintiff was a Muslin.

> b. Race

As to Plaintiff's contentions of "yelling and cursing" as the basis for racial harassment. Plaintiff sets forth no specific facts or evidence that the cursing and

---

[6] In the Complaint, Plaintiff alleges that he was constantly and continuously cursed and yelled at by his supervisors and co-employees, but sets forth no specific facts or evidence establishing that the cursing and yelling had anything to do with his religion, or race for that matter.

yelling had anything to do with race. Indeed, in his deposition Plaintiff denied being the target of any racial slurs. *Id. at pp. 197–198*. Plaintiffs own conclusory allegations and unsubstantiated assertions, without even a scintilla of evidence, are insufficient to establish this claim for hostile work environment.

In his Opposition Memorandum, Plaintiff also contends that requiring him to work outside in the heat and being denied water breaks inside constitute a hostile work environment based on race.[7] *R. 33, p. 9.* Considering the factors which weigh on whether a work environment is objectively abusive or hostile: (i) the frequency of the discriminatory conduct; (ii) its severity; (iii) whether it is physically threatening or humiliating, or a mere offensive utterance; and (iv) whether it unreasonably interferes with an employee's work performance, *Faragher*, 524 U.S. at 787-788, the Court finds that Plaintiff's hostile work environment claims in this regard lack merit.

As provided in the foregoing analysis as to disparate treatment, Plaintiff has admitted that working in an outdoor environment was part of his job description and regular job duties and that his work performance improved while employed with Linear Controls. The record provides that he worked on the East Breaks 165 platform from July 16, 2015 to July 26, 2015, then was off for six days before returning. *R. 33-*

---

[7] While the Court finds that Plaintiff failed to raise an harassment/hostile work environment claim based on his outdoor work and water breaks in his EEOC Charge, the Court will consider the claim for purposes of this motion for summary judgment.

*7, Plaintiff's Stmt. Of Disp. Facts, responding to ¶¶ 28, 38, 45 of Def. Stmt. Of Undisp. Facts.* According to the Complaint, it was during the period from July 16th to July 26th that Plaintiff alleges he was not allowed to work inside or take a water break inside. *R. 1, ¶ 8.* Plaintiff does not set forth facts showing that this occurred at other times or on other jobs, nor does he set forth facts showing that he suffered physical harm or injury as a result. Plaintiff's claims of hostile work environment are belied by his complaint that he resigned because he was not returned to work soon enough. The Court will grant Defendant's Motion as to hostile work environment on the basis of race.

## C. State Law Claims

### 1. The Louisiana Employment Discrimination Claims

The Louisiana Employment Discrimination Law, La. R.S. 23:301 (LEDL) prohibits an employer from discriminating against an individual based on his race, color, religion, sex, age, or national origin. The scope of the LEDL is the same as Title VII, and therefore, claims under the LEDL are analyzed under the Title VII framework and jurisprudential precedent. *DeCorte v. Jordan*, 497 F.3d 433, 437 (5th Cir. 2007). Because the outcome of the alleged discrimination claims under Louisiana law are the same as the outcome under Title VII, for the reasons discussed above, the LEDL claims must also be dismissed.

*2. Intentional Infliction of Emotional Distress*

For the claim of intentional infliction of emotional distress the plaintiff must prove 1) that the conduct of the defendant was extreme and outrageous; 2) that the emotional distress of the plaintiff was severe; and 3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct. *White v. Monsanto Co.*, 585 So.2d 1205, 1209 (La.1991). The conduct must be "...so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. Persons must necessarily be expected to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind." *Id.* at 1209.

Based on the record before the Court, Plaintiff cannot establish that he was subjected to the type of deliberate and repeated harassment required to give rise to a claim for intentional infliction of emotional distress. Further, he has not provided any evidence that he suffered any emotional distress, much less that the emotional distress he may have suffered was severe. In fact, Plaintiff describes himself as a "healthy, young man," who does not feel mentally unstable, who has never seen a

psychiatrist or a psychologist, and who does not feel like he needs mental health counseling. *R. 29-3, Exh. D, pp. 204-208.* While he was working for Linear Controls, Plaintiff testified that his overall performance improved throughout the course of time. *Id. at p. 147.* It was not until one year and three months after he resigned from Linear Controls, while working for his second, subsequent employer and after Plaintiff filed this lawsuit, that he saw his family doctor for anxiety on one occasion, December 27, 2016. *Id. at pp. 212, 217-225.* He made no mention of Linear Controls to the doctor. *Id.* Though the doctor offered prescription medication at that time, Plaintiff testified that he did not feel that he needed it and did not fill the prescription, nor does he plan to do so. *Id. at pp. 224-225.*

Plaintiff has failed to provide any evidence that he suffered severe emotional distress as a result of Defendant's alleged actions. Accordingly, Defendant's motion for summary judgment related to Plaintiff's state law claim for emotional distress will be granted.

THUS DONE AND SIGNED this 5th day of September, 2017, at Lafayette, Louisiana.

**CAROL B. WHITEHURST**
**UNITED STATES MAGISTRATE JUDGE**